UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAURA ANN ANDERSON,　　　　　 )
　　　　　　　　　　　　　　 )
　　　　　　Plaintiff,　　　 )
　　　v.　　　　　　　　　　 )　　　　CIVIL ACTION
　　　　　　　　　　　　　　 )　　　　NO. 15-10480-IT
CAROLYN COLVIN, Acting　　　 )
Commissioner of Social Security, )
　　　　　　　　　　　　　　 )
　　　　　　Defendant.　　　 )

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS REGARDING DENIAL OF
## <u>SOCIAL SECURITY DISABILITY INSURANCE BENEFITS</u>

March 9, 2016

DEIN, U.S.M.J.

### I.　<u>INTRODUCTION</u>

Plaintiff Laura Ann Anderson ("Anderson") has brought this action, pursuant to sections

205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in order to

challenge the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying her claim for Social Security Disability Insurance ("SSDI") benefits.

The matter is presently before the court on the plaintiff's "Motion to Reverse the Decision of

the Commissioner of Social Security" (Docket No. 28), by which Anderson is seeking an order

reversing the Commissioner's decision and allowing her claim for benefits, or in the alternative,

remanding the matter to the Social Security Administration for further administrative

proceedings.  The matter is also before the court on the defendant's "Motion to Affirm the

Commissioner's Decision" (Docket No. 31), by which the Commissioner is seeking an order

upholding her decision that Anderson is not disabled and is therefore not entitled to SSDI

benefits.  The sole issue raised by the parties' motions is whether the Social Security Appeals

Council committed reversible error by electing to review new evidence, which was submitted

after the Administrative Law Judge ("ALJ") had issued a decision, but declining to disturb the

ALJ's findings without supporting its decision with substantial evidence.  As described below,

the Appeals Council has no obligation to support its decision with substantial evidence.  Rather,

where, as here, the Appeals Council declines to review the ALJ's decision based on evidence

submitted after the ALJ's decision has been issued, its conduct is only reviewable to the extent

that it rests on an explicit mistake of law or other egregious error.  Because Anderson has not

shown that the Appeals Council was egregiously mistaken in this case, this court recommends

to the District Judge to whom this case is assigned that the plaintiff's motion to reverse or

remand be DENIED, and that the Commissioner's motion to affirm be ALLOWED.

## II.  STATEMENT OF FACTS[1]

Anderson was born on September 25, 1970, and was 44 years old at the time of her

hearing before the ALJ.  (Tr. 35).  She obtained her GED in approximately 1988, and completed

a certificate course in healthcare administration at Quincy College.  (Id.).  Anderson is married

and has three children.  (Tr. 55-56).  She resides with her family in Braintree, Massachusetts.

(Tr. 55).

During the time period from 1995 to 2013, the plaintiff held jobs as a payroll clerk, data

entry clerk and office clerk.  (Tr. 69, 180, 197).  She also held part-time jobs as a waitress and a

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. __."  The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 14.

2

census enumerator.  (Id.).  However, beginning in 2011, Anderson began to experience weight

loss and exhaustion, and in early August 2013, she was laid off from her job as an office clerk

because her health problems had resulted in too many absences.  (Tr. 36-37, 315).  Anderson

claims that she has been disabled from working since that time due primarily to pain and

chronic fatigue caused by fibromyalgia and histiocytosis, among other medical conditions.  (See

Tr. 34, 172, 180).

### Procedural History

On March 17, 2014, Anderson completed an application for SSDI, claiming that she had

been unable to work since the beginning of August 2013.  (Tr. 147).  Her application was denied

initially on March 28, 2014, and upon reconsideration on June 12, 2014.  (Tr. 76-93).

Subsequently, the plaintiff requested a hearing before an ALJ.  (Tr. 103-04).  The request was

granted, and a hearing took place on September 30, 2014 in Boston, Massachusetts.  (Tr. 30,

105-06).  Anderson, who was represented by counsel, appeared and testified at the hearing.

(Tr. 30-67).  In addition, the ALJ elicited testimony from a vocational expert ("VE"), who

described the plaintiff's vocational background based on her past work experience, and

responded to hypothetical questions, which were aimed at determining whether jobs exist in

the national and regional economies for an individual with the same age, educational

background, work experience and residual functional capacity ("RFC") as the plaintiff.  (Tr. 68-

74).  On October 31, 2014, the ALJ issued a decision denying Anderson's claim for benefits.  (Tr.

11-25).

**The ALJ's Decision**

A claimant is not entitled to SSDI benefits unless she is "disabled" within the meaning of the Social Security Act, which defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  In the instant case, the ALJ concluded that Anderson "ha[d] not been under a disability, as defined in the Social Security Act, from August 1, 2013, through the date of [his] decision" on October 31, 2014. (Dec. Finding #7; Tr. 24).  There is no dispute that the ALJ, in reaching his decision that Anderson was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. § 404.1520.  The procedure resulted in the following analysis, which is further detailed in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 3-11; Tr. 16-24).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If so, the claimant is automatically considered not disabled and the application for benefits is denied. See id.  In this case, the ALJ found that Anderson had not engaged in such activity since August 1, 2013, the alleged onset date of her disability.  (Dec. Finding #2; Tr. 16).  Accordingly, he proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  If not, the claimant is deemed not to be disabled and the application for benefits is denied.  See Seavey, 276 F. 3d at

4

5.  Here, the ALJ found that Anderson suffered from a number of severe impairments, including

"Langerhan's cell histiocytosis in her lungs bilaterally, emphysema, occipital neuralgia with

migraine headaches, chronic fatigue, fibromyalgia, and cervical degenerative disc disease."

(Dec. Finding #3; Tr. 17 (citation omitted)).

Because the ALJ determined that the plaintiff had impairments that were severe, he

proceeded to step three of the regulatory analysis.  The third inquiry is whether the claimant

has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the

Social Security regulations.  See Seavey, 276 F. 3d at 5; 20 C.F.R. § 404.1520(d).  At this step, the

ALJ concluded that Anderson's impairments, either alone or in combination, did not meet or

medically equal any of the listed impairments.  (Dec. Finding #4; Tr. 17).  Therefore, his analysis

continued.

The fourth inquiry in the five-step evaluation process asks whether "the applicant's

'residual functional capacity' is such that he or she can still perform past relevant work[.]"

Seavey, 276 F.3d at 5.  Thus, in order to answer this question, the ALJ must first determine the

claimant's RFC.  In the instant case, the ALJ concluded as follows with respect to Anderson's

RFC:

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a)[2] except she could lift
> and carry 10 pounds occasionally and 5 pounds frequently.  She could sit
> for 6 hours and stand or walk for 2 hours out of an 8 hour workday.  In
> addition, she could occasionally climb ramps or stairs, but never ropes,
> ladders or scaffolds, could occasionally stoop, kneel, crouch and crawl,

---

[2]  20 C.F.R. § 404.1567(a) defines "sedentary work" as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

> and has no limitations in balancing.  Furthermore, the claimant should
> avoid concentrated exposure to extremes in hot and cold temperatures,
> avoid moderate exposure to unprotected heights [and] humidity, and
> avoid all exposure to fumes, odors, dust, gases and other pulmonary
> irritants.  Finally, she could occasionally reach vertically and would
> require access to bathroom facilities every one and a half to two hours.

(Dec. Finding #5; Tr. 17).  Accordingly, the ALJ determined that Anderson retained the capacity

to perform a limited range of sedentary work despite her severe physical impairments.  As

described below, in connection with her appeal of the ALJ's decision to the Appeals Council,

Anderson submitted a pulmonary RFC assessment from her primary care doctor, Sheldon

Lockman, M.D., which contained additional limitations and in which Dr. Lockman opined that

the plaintiff was disabled from all gainful employment.  While the plaintiff does not take issue

with the ALJ's assessment of her RFC, she contends that the Appeals Council erred by failing to

provide an adequate explanation for its decision not to credit Dr. Lockman's opinion.

In reaching his conclusion regarding Anderson's RFC, the ALJ considered the plaintiff's

testimony at the hearing, conducted a detailed review of the plaintiff's medical records, and

evaluated the available opinion evidence.  (Dec. 5-9; Tr. 18-22).  With respect to the opinion

evidence, the ALJ noted that while the record included physical RFC assessments from two

state agency physicians, it contained no such assessment from any treating source.  (Dec. 9; Tr.

22).  He also stated that he had given "less weight" to the opinions of the state agency

physicians, each of whom had determined that Anderson retained the capacity to perform a

limited range of light work.[3]  (Id.).  As the ALJ explained, his determination that the plaintiff had

---

[3] "Light work" is defined in the Social Security regulations as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If

the RFC to perform a limited range of sedentary work was based upon "the record as a whole[,]" including the plaintiff's hearing testimony and statements she had made to her treating sources "regarding the severity of her symptoms and functional limitations." (Id.).  He further explained that "with reported symptom improvement and continued compliance with a successful pain management regimen, the undersigned finds the claimant could still perform sedentary exertional work" but with certain postural and environmental limitations described in the opinions of the two state agency physicians.  (Id.).  Anderson does not dispute that the record before the ALJ contained no opinion evidence from any of her treating sources, and she has not challenged the ALJ's analysis of the evidence that was available to him.  Nevertheless, she contends that the Appeals Council's failure to provide more detailed reasons for its decision to reject newly submitted opinion evidence from her treating physician is particularly significant given that the absence of such evidence "was noted in the decision under review."  (Pl. Mem. (Docket No. 29) at 12).

    After explaining the basis for his RFC determination, the ALJ compared Anderson's RFC with the physical and mental demands of her past work as a payroll and data entry clerk.  (Dec. 9-10; Tr. 22-23).  The ALJ determined that such work, as generally performed, does not require the performance of work-related activities that would be precluded by the plaintiff's RFC.  (Id.).  Accordingly, he concluded that Anderson was capable of performing her past relevant work as a sedentary payroll or data entry clerk, and was therefore not disabled within the meaning of the Social Security regulations.  (See Dec. Finding #6; Tr. 22).

----

someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

Although the ALJ could have ended his analysis at step four,[4] he proceeded to make additional findings at step five of the analytical process.  (Dec. 10-11; Tr. 23-24).  The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work.  See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  Id.  At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey, 276 F.3d at 5.  Here, the ALJ relied on the VE's testimony to conclude that Anderson was capable of performing alternative jobs that exist in significant numbers in the national economy, including the jobs of a cashier, telephone order clerk, and an inspector in a manufacturing environment.  (Dec. 10-11; Tr. 23-24).  Therefore, the ALJ found that the plaintiff was not disabled under the Social Security Act.  (Dec. 11; Tr. 24).

## Submission of New Evidence to the Appeals Council

On November 24, 2014, Anderson filed a request for review of the ALJ's decision by the Social Security Appeals Council.  (Tr. 8-10).  In connection with her request, Anderson informed the Appeals Council that "there is new evidence in the claimant's favor that was received after the hearing was concluded that could materially impact the [ALJ's] decision."  (Tr. 10 (emphasis omitted)).   She also submitted copies of the additional evidence to the Appeals Council.  (See id.).  That evidence consisted of Progress Notes from Anderson's appointments with Dr. Lockman on September 11, 2014, October 7, 2014 and November 5, 2014, as well as a

---

[4] "All five steps are not applied to every applicant, as the determination [as to whether the applicant is disabled] may be concluded at any step along the process."  Seavey, 276 F.3d at 5.

Pulmonary RFC Questionnaire, which was completed by Dr. Lockman on October 7, 2014.  (Tr. 350-55, 358-62).

As set forth in the Pulmonary RFC Questionnaire, Dr. Lockman opined that the plaintiff would be able to sit for a total of at least 6 hours in an 8-hour workday, but could stand for no more than 30 minutes at a time before needing to sit down.  (Tr. 360).  He also opined that the plaintiff could occasionally lift 10 pounds, twist, stoop, and crouch or squat, could never climb ladders and could rarely climb stairs.  (Id.).  With respect to environmental exposures, Dr. Lockman recommended that Anderson avoid even moderate exposure to extreme cold, as well as concentrated exposure to high humidity, wetness, and various environmental irritants.  (Tr. 361).

Notably, in his RFC Questionnaire, Dr. Lockman indicated that Anderson would need to take unscheduled breaks totaling at least 2 hours in an 8-hour workday, would need to lie down about two times a day, and would miss about four days of work per month as a result of her impairments.  (Tr. 360-62).  He further stated that Anderson's chronic fatigue and chronic pain would interfere with her ability to concentrate and perform work, and that she was disabled from carrying out any substantial gainful employment.  (Tr. 361-62).  During the hearing, the VE testified that if an individual with the same age, education, language, work background and RFC as the plaintiff were to miss work between three and four times per month, or were to take unscheduled breaks totaling two hours in an 8-hour workday, that individual would be very unlikely to maintain any type of employment.  (See Tr. 70-74).  Thus, based on the limitations described by Dr. Lockman, Anderson would not have the capacity to carry out any type of full time employment.

9

On December 23, 2014, the Appeals Council notified Anderson that it was denying her

request for review of the ALJ's decision.  (Tr. 1).   Significantly, in its letter, the Appeals Council

informed Anderson that it had considered the reasons why she disagreed with the ALJ's

decision, and had reviewed the additional evidence obtained from Dr. Lockman.  (See id.).  The

Appeals Council further stated in relevant part as follows:

> We found that this information does not provide a basis for changing the
> Administrative Law Judge's decision.
>
> We looked at the additional evidence from Sheldon Lockman, M.D.,
> dated September 11, 2014 to November 5, 2014.  We found this
> information does not show a reasonable probability that, either alone, or
> when considered with the other evidence of record, would change the
> outcome of the [ALJ's] decision.

(Tr. 2 (citation omitted)).   Because the Appeals Council "found no reason under [its] rules to

review the [ALJ's] decision[,]" it denied Anderson's request for review.  (Tr. 1).  Thus, Anderson

has exhausted her administrative remedies, and this case is ripe for review pursuant to 42

U.S.C. § 405(g).

Additional factual details relevant to this court's analysis are described below where

appropriate.

### III.  ANALYSIS

#### A.   Standard of Review

The plaintiff argues, in support of her motion to reverse the Commissioner's decision,

"that the Appeals Council cannot elect to review newly submitted evidence and reject this

evidence without supporting the decision with substantial evidence."  (Pl. Mem. at 11).  The

Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842

(1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)).  Under the law of the First Circuit, however, the substantial evidence standard does not

apply to the actions of the Social Security Appeals Council.

Ordinarily, "[t]he Court reviews the decision of the ALJ to determine whether it was . . .

supported by substantial evidence." Yankun v. Barnhart, 473 F. Supp. 2d 147, 149 (D. Mass.

2006).  However, in this case, the plaintiff does not argue that the ALJ erred or that his decision

was not based on substantial evidence in the record.  Instead, Anderson is challenging only the

Appeals Council's decision to decline review of the ALJ's decision.  Under such circumstances,

the Appeals Council's decision "is only reviewable to the extent that it rests on an 'explicit

mistake of law or other egregious error.'" Saenz v. Colvin, 61 F. Supp. 3d 195, 205 (D. Mass.

2014) (quoting Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001)).  Indeed, the First Circuit has

confirmed that the "egregious error" standard applies in "social security cases where new

evidence is tendered after the ALJ decision." Mills, 244 F.3d at 5.  Thus, there is no merit to the

plaintiff's argument that the Appeals Council erred by failing to support its decision with

substantial evidence.[5]  Furthermore, for the reasons detailed below, Anderson has not

established that that the Appeals Council provided an egregiously mistaken basis for denying

her request for review.

**B.**     **Appeals Council's Failure to Provide a Detailed Basis for its Decision**

---

[5]  To the extent Anderson suggests that the evidence submitted to the Appeals Council rendered the ALJ's decision erroneous, any such argument must fail.  "It is well-established that when reviewing the ALJ's decision, the Court should not consider additional evidence that was never presented to the ALJ." Saenz, 61 F. Supp. 3d at 205.  "To weigh the new evidence as *if* it were before the ALJ would be … a very 'peculiar' enterprise," and "one that distorts analysis.  The ALJ can hardly be expected to evaluate or account for the evidence that he never saw." Mills, 244 F.3d at 4 (quoting Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994)).

Anderson has not attempted to show that the Appeals Council's decision was based on an egregious error.  Instead, she contends that the Appeals Council's failure to articulate any substantive reasons for rejecting the opinion of the plaintiff's treating physician renders it impossible for the court to conduct a meaningful review of the Appeals Council's decision.  (Pl. Mem. at 12).  As described above, the Appeals Council provided no discussion of the newly submitted evidence, explaining only that it had considered the additional evidence from Dr. Lockman, and found that it "does not show a reasonable probability that, either alone, or when considered with the other evidence of record, would change the outcome of the [ALJ's] decision."  (Tr. 2 (citation omitted)).  This court finds that the Appeals Council's failure to offer a more detailed explanation for its decision is insufficient to warrant a reversal of the Commissioner's decision or a remand of the matter to the Social Security Administration.

As the First Circuit explained in Mills, "the Appeals Council need not and often does not give reasons" for denying a request for review, "and the regulations appear to provide the Appeals Council with a great deal of latitude in deciding which cases should be reviewed." Mills, 244 F. 3d at 5.  Accordingly, it "assume[d] that the Appeals Council's refusal to review would be effectively unreviewable [in court] if no reason were given for the refusal."  Id. at 6. See also Robbins v. Astrue, Civil No. 09-cv-343-JD, 2010 WL 3168306, at *3 (D.N.H. Aug. 9, 2010) (finding, based on Mills, that "an Appeals Council denial of review, without a stated reason, is effectively unreviewable").  Under Mills, therefore, the Appeals Council had no obligation to articulate the reasons for its decision not to credit Dr. Lockman's opinion.  To the extent the plaintiff contends otherwise, her argument lacks merit.

C.     **Failure to Establish Egregious Error**

Although courts may lack the ability to review "the thousands of simple 'review denied'

decisions that the Appeals Council must issue every year[,]" an Appeals Council's decision is

itself reviewable in some limited circumstances.  Mills, 244 F.3d at 6.  The First Circuit has held

that in cases where the Appeals Council articulates a basis for its decision to deny review, that

decision is "reviewable [by the court] to the extent that it rests on an explicit mistake of law or

other egregious error."  Id. at 5.  However, "[t]his avenue of review has been described as

'exceedingly narrow.'"  Kirby v. Astrue, No. C.A. 07-422A, 2008 WL 2787926, at *10 (D.R.I. July

17, 2008) (quoting Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287, at *2 (D.

Mass. Dec. 22, 2006)).  Thus, a claimant can only prevail on a challenge to such a decision if she

can show "that the Appeals Council was 'egregiously mistaken' in its decision to deny [her]

request for review."  Id. at *11.

While the Appeals Council in the instant case provided no substantive basis for its

decision to deny Anderson's request for review, it did not simply deny review.  Instead, it

declined to review the ALJ's decision because it found no reasonable likelihood that the new

information from Dr. Lockman, either on its own or when considered in the context of the

record as a whole, would have changed the outcome of that decision.  (See Tr. 2).  Assuming

that this is sufficient to subject the decision to judicial review, this court finds that the plaintiff

would still not prevail on her motion.  As described above, the plaintiff has not argued or

attempted to show that the Appeals Council was "egregiously mistaken" in its decision to deny

her request for review.  Moreover, this court finds that the record does not support such a

conclusion.

The record demonstrates that Anderson submitted two categories of evidence to the Appeals Council in connection with her challenge to the ALJ's decision.  The first category consisted of three Progress Notes from her appointments with Dr. Lockman on September 11, October 7, and November 5, 2014.  (Tr. 350-55).  Those records describe Anderson's ongoing treatment for fibromyalgia, histiocytosis, insomnia, headaches, chronic fatigue and pain in her neck and shoulder.  (See id.).  All of those conditions are well documented in the records that were before the ALJ.  (See Dec. 5-8; Tr. 18-21; see also Tr. 76, 279, 289, 323, 326, 337-38).  In addition, the ALJ considered Anderson's complaints regarding the symptoms and limiting effects of those conditions, and he found that her histiocytosis, migraine headaches, chronic fatigue, fibromyalgia and cervical degenerative disc disease were "severe impairments" for purposes of the disability analysis.  (Dec. Finding #3; Tr. 17; see also Tr. 18).  Because the Progress Notes are cumulative of evidence that was already in the record before the ALJ, Anderson cannot show that the Appeals Council erred when it concluded that those records would not have changed the outcome of the ALJ's decision.   See Moore v. Astrue, C.A. No. 11-cv-11936-DJC, 2013 WL 812486, at *13-15 (D. Mass. Mar. 2, 2013) (finding no egregious error where new evidence submitted to Appeals Council was cumulative of evidence before the ALJ).

The second category of new evidence that was presented to the Appeals Council consisted of Dr. Lockman's Pulmonary RFC Questionnaire.  Therein, Dr. Lockman listed Anderson's diagnoses as histiocytosis, chronic fatigue and fibromyalgia, and described her symptoms as "shortness of breath" and "fatigue." (Tr. 358).  He also responded to questions regarding her physical RFC.  (Tr. 360-62).  To the extent Dr. Lockman assessed Anderson's ability to sit, stand, walk, lift and perform various postural activities, his opinions were almost entirely

14

consistent with the ALJ's RFC assessment, [6] while Dr. Lockman's opinion regarding the degree to which Anderson should avoid various environmental exposures was, for the most part, less restrictive than the assessment of the ALJ.[7]  (Compare Tr. 360-61 with Dec. Finding #5; Tr. 17). Therefore, the plaintiff cannot show that the Appeals Council was egregiously mistaken when it determined that there was no reasonable probably that Dr. Lockman's opinions on those matters would have altered the ALJ's decision.

In his Pulmonary RFC Questionnaire, Dr. Lockman indicated that Anderson's symptoms would interfere with her ability to work, and that he considered her disabled from any substantial gainful employment.  (Tr. 361-62).  However, "the ultimate determination of disability is for the ALJ, not the treating physician(s), to decide."  Moore, 2013 WL 812486, at *7.  Thus, "opinions that a claimant is 'disabled or unable to work' are legal conclusions 'reserved to the Commissioner[.]'"  Saenz, 61 F. Supp. 3d at 206 (quoting 20 C.F.R. § 404.1527(d)(1)).  The fact that the Appeals Council failed to credit Dr. Lockman's opinions in this regard does not constitute egregious error.  See Philbrook v. Colvin, C.A. No. 1:14-cv-10766-LTS, 2015 WL 2376129, at *3 (D. Mass. May 19, 2015) (slip op.) (because treating source's opinion that plaintiff's condition "grossly interferes with her ability to do any type of work" is a legal

---

[6]  The ALJ determined that Anderson had the ability to climb stairs occasionally, while Dr. Lockman opined that she could do so only rarely.  (Dec. Finding #5; Tr. 17, 360).  However, both Dr. Lockman and the ALJ determined that Anderson could sit for at least 6 hours in an 8-hour workday, lift and carry 10 pounds occasionally, stoop and crouch occasionally, and never climb ladders.  (Id.).

[7]  While Dr. Lockman opined that Anderson should avoid moderate exposure to extreme cold and concentrated exposure to high humidity, wetness, solvents/cleaners, fumes, odors, gases, dust and chemicals, the ALJ determined that Anderson "should avoid concentrated exposure to extremes in hot and cold temperatures, avoid moderate exposure to unprotected heights [and] humidity, and avoid all exposure to fumes, odors, dust, gases and other pulmonary irritants."  (Dec. Finding #5; Tr. 17, 361).

conclusion that is reserved for the Commissioner, "Appeals Council did not err in finding that this opinion would not have changed the outcome of the [ALJ's] decision").

This leaves Dr. Lockman's opinion that Anderson would need to take unscheduled breaks totaling at least 2 hours in an 8-hour workday, would need to lie down about two times a day, and would miss about four days of work per month as a result of her impairments.  (Tr. 360-62).  Based on the VE's testimony during the hearing before the ALJ, such restrictions, if credited, would have rendered Anderson disabled from any gainful work activity.  (See Tr. 70-74).  This court finds that this evidence too is insufficient to show that the Appeals Council's decision rests on an egregious error.

"The law in this circuit does not require the ALJ to give greater weight to the opinions of treating physicians."  Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (quoting Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)).  Pursuant to the Social Security regulations, "'[c]ontrolling weight' is typically afforded a treating physician's opinion on the nature and severity of an impairment where it . . . 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the claimant's case."  Id. (quoting 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)).  However, the ALJ is entitled "to downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians."  Id.  In the instant case, the ALJ had all except two of Dr. Lockman's Progress Notes for the time period from January 2011 through the

date of his decision on October 31, 2014.[8] (See Tr. 270-73, 281-90, 323-24, 328-47). Thus,

although the ALJ had no opportunity to consider Dr. Lockman's opinion, he was able to consider

nearly all of the underlying records in connection with his assessment of Anderson's RFC. See

Kirby, 2008 WL 2787926, at *11 (finding that Appeals Council was not egregiously mistaken in

its decision to deny plaintiff's request for review where ALJ had opportunity to review treating

physician's underlying records). Anderson has not challenged the ALJ's conclusion that nothing

reflected in those records precluded her ability to carry out a limited range of sedentary work.

Moreover, the ALJ conducted a thorough review of the available medical evidence and other

evidence of record, including Anderson's own testimony about the nature and limiting effects

of her symptoms, evidence regarding the plaintiff's daily activities, and records from all of

Anderson's other treating physicians. (See Dec. 5-9; Tr. 18-22). As the ALJ stated in his written

decision, his assessment of Anderson's RFC was based "on the record as a whole[.]" (Dec. 9; Tr.

22). Anderson does not take issue with the ALJ's reading of the record or his ultimate

determination regarding her physical RFC. Under such circumstances, this court cannot

conclude that the Appeals Council was egregiously mistaken in finding that Dr. Lockman's

opinion would not have changed the outcome of the ALJ's decision. See Philbrook, 2015 WL

2376129, at *4 (finding that Appeals Council did not err in denying review based on opinion

from plaintiff's surgeon where ALJ "cited extensively to [plaintiff's] doctors' reports and daily

---

[8] The only Progress Notes that were not before the ALJ included Dr. Lockman's notes from his appointments with Anderson on September 11, 2014, October 7, 2014 and November 5, 2014. (See Tr. 350-55). However, the ALJ could not have reviewed the November 5, 2014 Progress Notes in any event because they were generated after the date of the ALJ's written decision.

activities to support his determination of her RFC").  For this reason as well, this court finds that the Commissioner's decision to deny the plaintiff's application for benefits must be upheld.

### IV.  CONCLUSION

For all the reasons detailed herein, this court recommends that the plaintiff's "Motion to Reverse the Decision of the Commissioner of Social Security" (Docket No. 28) be DENIED, and that the defendant's "Motion to Affirm the Commissioner's Decision" (Docket No. 31) be ALLOWED.[9]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[9] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).